1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

MARK OLIVER JOLIVETTE,

              Plaintiff,

       v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

Case No. SACV 14-01953-DFM

MEMORANDUM OPINION AND
ORDER

Plaintiff Mark Oliver Jolivette ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security supplemental security income ("SSI"). For the reasons discussed below, the Court concludes that the ALJ erred in assessing Plaintiff's credibility. The ALJ's decision is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on September 8, 2011, alleging disability beginning January 1, 2005. Administrative Record ("AR") 26. The

ALJ found that Plaintiff had the severe impairments of schizoaffective disorder, personality disorder, and a history of polysubstance dependence and abuse. AR 28. The ALJ found that Plaintiff had the residual functional capacity to perform a full range of work but was limited to jobs involving simple, routine tasks, minimal contact with the public, only essential contact with supervisors, and no more than occasional contact with co-workers. AR 30. Based on the testimony of a vocational expert, the ALJ concluded that notwithstanding these limitations, Plaintiff was capable of working as a night cleaner, warehouse laborer, and machine feeder. AR 37-38.

## II.

## DISCUSSION

As the ALJ summarized, Plaintiff testified that: he was not working because he became angry too easily, and most of his efforts to control his anger did not work; he did not like being around people; he heard voices telling him to do bad things, such as commit robbery, during his only attempt to work since being off drugs and on medication; and he frequently became paranoid and thought people were out to get him, and thus preferred to be alone. AR 30. The ALJ found Plaintiff "only partially credible, based in part on his conflicting statements in varying circumstances, and in part on his long history of polysubstance abuse." AR 36. Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony. JS at 19-22. The Court agrees.[1]

To determine whether a claimant's testimony about subjective pain or

---

[1] Because the Court concludes that the ALJ improperly discounted Plaintiff's testimony, the Court does not reach the question of whether the ALJ properly discounted the opinions of Plaintiff's treating and examining physicians. See JS at 5. Upon remand, the ALJ may wish to address Plaintiff's other claim of error.

2

symptoms is credible, an ALJ must engage in a two-step analysis. <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009) (citing <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. <u>Lingenfelter</u>, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996)). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other

3

1   ordinary techniques of credibility evaluation. Id.

2        Here, the ALJ assumed without discussion that the Plaintiff's medically

3   determinable impairments could reasonably be expected to cause the alleged

4   symptoms, but she determined that Plaintiff's statements concerning the

5   intensity, persistence, and limiting effects of these symptoms were not entirely

6   credible. AR 30. Having carefully reviewed the record, the Court finds that the

7   ALJ's reasons for rejecting Plaintiff's credibility were not clear and convincing.

8        First, although the ALJ found that Plaintiff gave "conflicting

9   statements" about his symptoms and limitations, AR 36, she failed to point to

10  any such conflicting statements in the record. Thus, the Court cannot find that

11  Plaintiff's "conflicting statements" were a clear and convincing reason for

12  discounting Plaintiff's testimony. See McNair v. Colvin, No. 14-03117, 2015

13  WL 2453763, at *6 (E.D. Wash. May 22, 2015); see also Reddick, 157 F.3d at

14  722.

15       Second, the ALJ discredited Plaintiff in part because of his "long history

16  of polysubstance abuse." AR 36. A history of substance abuse, however, is not

17  in itself a basis for discrediting a claimant's testimony. See Woodsum v.

18  Astrue, 711 F. Supp. 2d 1239, 1262 (W.D. Wash. 2010) ("[D]iscounting

19  plaintiff's credibility because of her substance abuse . . . history was improper,

20  given that it bears little relevance to plaintiff's tendency to tell the truth."); see

21  also Rangel v. Colvin, No. 12-01169, 2013 WL 3456975, at *8 (E.D. Cal. July

22  9, 2013) (same); Hunt v. Astrue, No. 11-01391, 2012 WL 2805034, at *1 (C.D.

23  Cal. July 9, 2012) (same). Given that the ALJ found no evidence Plaintiff had

24  lied about prior substance abuse, was actively abusing controlled substances, or

25  had made prior inconsistent statements, Plaintiff's "long history of

26  polysubstance abuse" was not a clear and convincing reason for rejecting his

27  credibility. See Rangel, 2013 WL 3456975, at *8.

28  ///

4

Third, although the ALJ did not directly state that Plaintiff's life circumstances were among her reasons for discounting his credibility, she appeared to infer that Plaintiff's mental-health issues were attributable to "his status as a convicted felon[] and sex offender, as well as his circumstances of homelessness and unemployment," which "contribute[d] to feelings of depression." AR 36. While that may be true, these factors are not relevant to Plaintiff's credibility. See Smolen, 80 F.3d 1283-84 & n.8 (listing types of evidence that may be considered in credibility determination).

Finally, the ALJ concluded that "the widely varying opinions regarding [Plaintiff's] mental strengths and weaknesses suggest that [Plaintiff] is not as limited as he sometimes appears to be." AR 36. Specifically, she found that Plaintiff "presented as functioning fairly well in all of his encounters with Dr. Bass," but "presented as functioning much more poorly when evaluated by Dr. Fernandez and Dr. Woods, both of whom examined him in connection with his claim for disability benefits." AR 36. To the extent this was given as a reason for discounting Plaintiff's credibility, this finding is not supported by substantial evidence.

As Plaintiff notes, see JS at 20-21, Dr. Bass, Plaintiff's treating physician, found that Plaintiff presented multiple mental-health issues that impacted his ability to work. AR 320 (in May 2012, opining that Plaintiff had major depression which "significantly interferes with his concentration and energy, and makes him unable to function on any job"); AR 341-48 (in March 2012, opining that Plaintiff suffered from bipolar disorder, emotional lability, delusions or hallucinations, difficulty thinking or concentrating, manic syndrome, racing thoughts, irritability, and auditory hallucinations, and was likely to miss work more than three times a month). Dr. Bass found that Plaintiff was moderately limited in his ability to maintain a regular schedule, perform activities within a schedule, sustain an ordinary routine without

supervision, and complete a normal workweek and markedly limited in his ability to interact appropriately with the public, get along with coworkers, work in coordination with others, travel or use public transport, and set realistic goals or make independent plans. AR 344-46. Dr. Bass also indicated that Plaintiff did not suffer from low IQ. AR 347.

Contrary to the ALJ's findings, Dr. Bass's opinion was not significantly different from those of Drs. Wood and Fernandez, each of whom examined Plaintiff and also found that Plaintiff's mental-health impairments would prevent him from sustaining full-time employment. For instance, Dr. Woods opined that Plaintiff's had full-scale IQ of 73, bipolar disorder, major depressive disorder with psychotic features, and a GAF of 55.[2] AR 349-61. Dr. Woods opined that Plaintiff could not sustain full-time employment because of his depressive symptoms and problems with anger management; could understand and remember simple directions but was easily distracted from finishing tasks; had mood instability and might have hallucinations that would interfere with any work; and was mildly mentally retarded in all areas except working memory. AR 351. In a letter dated September 11, 2013, Dr. Woods opined that Plaintiff might have had some frontal-lobe dysfunction as a result of a childhood car accident, which could cause difficulty with judgment, impulse control, and the ability to determine consequences. AR 411. Dr.

_____

[2] A GAF score of 55 indicates either moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000) ("DSM IV"). The Commissioner has declined to endorse GAF scores, Fed. Reg. 50764-65 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

6

Wood also opined that Plaintiff's drug use may have caused a substantial decrease in his neurotransmitters. Id.

Similarly, Dr. Fernandez diagnosed depressive disorder, bipolar disorder, dementia secondary to drug use, anxiety disorder, and personality disorder. AR 296. He found that Plaintiff had a full-scale IQ of 72 and a GAF of 37.[3] AR 295-96. Dr. Fernandez noted that Plaintiff's affect was depressed; his attention and concentration were short; his insight and judgment were poor; he could understand simple instructions but would have difficulty remembering them and carrying them out; and he had poor ability to make simplistic work-related decisions without special supervision or deal with changes in work routine. AR 297. Dr. Fernandez also "questione[d] whether or not [Plaintiff] would be able to function . . . appropriately with supervisors, coworkers and peers given his extensive history and current diagnoses." Id.

Thus, although these doctors' findings and opinions did not overlap completely, all three agreed that Plaintiff suffered from major depression, bipolar disorder, and other impairments that would preclude adequate concentration and capacity to deal with work-related demands, including interacting with others and following through on assigned tasks. The most significant difference between Dr. Bass's opinion and those of the examining physicians was his finding that Plaintiff did not suffer from low IQ. AR 347. Notably, the record did not reflect that Dr. Bass performed any intellectual-function testing. Drs. Woods and Fernandez, by contrast, each conducted formal IQ testing and reported very similar results. See AR 351, 295. Therefore, any finding that Plaintiff's credibility was undermined by the "widely varying opinions" of his doctors is not supported by substantial evidence. See Ake v. Oklahoma, 470 U.S. 68, 81 (1985) ("Psychiatry is not . . .

---

[3] A GAF of 37 may indicate major impairment. See DSM IV 34.

an exact science.").

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004) (quoting <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (per curiam)).

Where, as here, a claimant contends that he is entitled to an award of benefits because of an ALJ's failure to properly consider the claimant's testimony, the Court applies a three-step framework. First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony. <u>Treichler v. Comm'r Soc. Sec.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014). Second, the Court determines "whether further administrative proceedings would be useful," asking "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." <u>Id.</u> at 1103-04. This Court must "assess whether there are outstanding issues requiring resolution before considering whether to hold that the claimant's testimony is credible as a matter of law." <u>Id.</u> at 1105. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." <u>Id.</u> at 1101 (citations omitted). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to

exercise its discretion to remand for an award of benefits. <u>Id.</u>

Here, it is unclear from the record whether Plaintiff is disabled. As the ALJ correctly noted, "[t]he evidence in this case is quite mixed and inconsistent." AR 36. Further administrative proceedings would therefore be useful. Remand is appropriate to enable the ALJ to reassess Plaintiff's credibility consistent with this opinion.

### III.

### CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

Dated:  October 6, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

9